UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────X

STACEY LYNN ANGRISANI,

            Plaintiff,

            OPINION & ORDER
-against-          CV-01-8453 (SJF)(MDG)

LONG ISLAND RAILROAD and UNITED
TRANSPORTATION UNION LOCAL,

            Defendants.
──────────────────────────────X
FEUERSTEIN, J.

Stacey Lynn Angrisani (plaintiff) commenced this employment discrimination action against defendants Long Island Railroad (LIRR) and United Transportation Union Local (UTU) (collectively, defendants) alleging claims under the New York State Human Rights Law (NYSHRL), Executive Law §§ 290, *et seq*. Defendants now separately move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint. Plaintiff does not oppose the motions. For the reasons stated herein, defendants' motions are granted.

I.      BACKGROUND

    A.    Factual Background[1]

On September 16, 1999, plaintiff applied for employment with the LIRR. On May 10,

---

[1] The facts are derived from defendants' statements of material facts pursuant to Local Rule 56.1 and the accompanying affidavits and other evidentiary material filed in support of defendants' respective motions for summary judgment. The facts are undisputed.

1

2000, plaintiff signed a "Medical History Report" indicating that she had prior injuries to her ankles, knees, neck, back, and shoulders. On May 31, 2000, plaintiff commenced employment with the LIRR as an assistant conductor in the Transportation Department.

Plaintiff's employment with the LIRR was governed by a collective bargaining agreement (CBA) between the LIRR and UTU[2] dated December 31, 1999. Article 23 of the CBA establishes a probationary period for new train service employees of the LIRR and provides, in pertinent part, as follows:

> (1) An applicant for employment shall be rejected within * * * one year [] after the first day of service or the applicant shall be deemed to have been accepted.

The LIRR Probation Policy, effective June 2000, provides, in relevant part, as follows:

> The probation period is an intrinsic part and extension of the employee selection process during which the employee will be considered an at-will employee in that position, in training and under careful observation and evaluation by supervisory and management personnel. Generally, this period will be utilized to train and evaluate the employee's effective adjustment to work tasks at the LIRR, his/her conduct, observance of rules, attendance, and job responsibilities.
>
> * * *
>
> This policy applies to the probation period for all newly hired * * * employees as stipulated in the [CBA] governing the new position.
>
> * * *
>
> Employment may be terminated at the will and sole discretion of the [LIRR] at any time, for any reason or no reason, during the probation period. In cases of probationary release from [LIRR] service, formal advance notice by the [LIRR] is not required.

Plaintiff received copies of the CBA and the Probation Policy at the beginning of her

---

[2] UTU is an unincorporated international labor organization serving as the exclusive bargaining representative under the Railway Labor Act, 45 U.S.C. §§ 151-188 (RLA) for, *inter alia*, the train service employees of the LIRR.

employment. In addition, plaintiff, as a newly-hired employee, was warned by Mike Villano (Villano), an LIRR instructor, and her union representatives, *inter alia*, that the LIRR would conduct surveillance of any employee who took leave on account of injury.

On October 31, 2000, plaintiff injured her neck, shoulders and back in an on-the-job accident. On November 1, 2000, plaintiff consulted Dr. Feder, an orthopedist, who diagnosed her with lumbar, cervical and shoulder sprains; prescribed pain medication which she claimed made her drowsy; and signed a disability certificate indicating that she was "Totally Incapacitated" and unable to return to work. He characterized her condition as a total disability in a workers' compensation report. At plaintiff's request, Dr. Feder also added the notation "No Driving" to the disability certificate. On that same date plaintiff completed a Sick Leave Application requesting leave from November 9, 2000 through November 16, 2000, which was approved.

The LIRR received the disability certificate on November 3, 2000. On that same date, plaintiff visited Dr. James V. Tremaroli (Dr. Tremorali), who was, at all relevant times, physician in charge of the LIRR. Plaintiff told Dr. Tremaroli that she could not sit for any extended period, stand for more than ten minutes, hold up her head, climb more than one flight of stairs, or engage in any recreational activities, including shopping.

On November 3 or 4, 2000[3], the LIRR retained Investigators, Inc. to conduct video surveillance on plaintiff. On November 5, 2000, an investigator videotaped plaintiff shopping and reported to the LIRR that plaintiff had been away from her home for three hours and was observed walking without impediment, entering and exiting the passenger seat of a car with no

---

[3] There is a discrepancy between the parties' papers and the evidence in the record.

restriction or hesitation, and leaning into a car from the outside.

Plaintiff returned to Dr. Feder on November 8, 2000, at which time she complained of some neck pain radiating into her right shoulder and difficulty moving her neck.

Plaintiff returned to Dr. Tremaroli on November 9, 2000, at which time she told him, *inter alia*, that she had to fight to hold her neck up, she could not engage in any recreational activities, she could not sit or stand for long, she could not drive, she could only lie in bed, she had not tried to walk, and she had not left her house except to visit doctors. On that same date, plaintiff informed the LIRR that she was taking further sick leave beginning that day. That same evening, plaintiff attended a movie with a friend, and the next day she attended a parent-teacher conference and accompanied her mother and daughter on several errands.

Investigators, Inc. conducted further video surveillance of plaintiff on November 10-12, 2000. No videotape footage was secured of the claimant during that period because she was not observed exiting her home. The investigator attributed the inactivity to poor weather conditions.

Plaintiff was again seen by Dr. Tremaroli on November 16, 2000, at which time she told him that she took the train and walked to the LIRR medical office from the train station, but that all she could do at home was watch television, she could not move or perform her daily activities as usual, and she could only walk ten minutes in pain, sit or stand with pain, climb seven steps, and drive very short distances.

On November 17, 2000, plaintiff again took the train to the LIRR medical office to attend physical therapy. Investigators, Inc. conducted further video surveillance of plaintiff on that date, during which the investigator observed plaintiff moving rapidly while driving her car; leaning across her car seat to yell and gesticulate at a truck driver who had cut her off in traffic; moving

4

freely with no restrictions, then visibly changing her gait to appear stiff as she approached the medical office; rapidly alighting from a train; and entering her vehicle without hesitation.

On November 18, 2000, plaintiff traveled by car and ferry to Hartford, Connecticut.

Dr. Feder repeatedly noted plaintiff's condition to be a "Total Disability" on workers' compensation forms dated November 8, 15 and 29, 2000, and January 26, 2001. By note dated November 29, 2000, Dr. Feder cleared plaintiff to return to work full duty.

By letter dated December 1, 2000, the LIRR terminated plaintiff's employment. The termination letter, which plaintiff received on December 8, 2000, stated, in pertinent part, as follows:

> As discussed at the Pre-employment Interview and the New Employee Orientation, the first year of an employee's service with the [LIRR] is a probationary period. This probationary period is an intrinsic part and extension of the employee selection process during which you are considered in training and under careful observation and evaluation with respect to effective adjustment to work tasks, conduct, observance of rules, attendance and job responsibilities. Your probationary period started on May 31, 2000.
>
> This letter is to advise you that effective this date your employment with the [LIRR] is terminated in accordance with the [LIRR] Probationary Policy.

Immediately after receiving the termination letter, plaintiff contacted Bob Celebre (Celebre), a local chairman for Local Lodge 645, and Michael Canino (Canino), general chairman of the General Committee of Adjustment (GCA) 505[4]. At Celebre's advice, plaintiff contacted Barry Kaufman (Kaufman), the LIRR superintendent who signed the letter of termination, who explained to plaintiff that her termination was related to the surveillance. In

---

[4] The Local Lodge 645 and GCA 505 are subordinate bodies which administer the CBA on behalf of UTU.

response to plaintiff's request that UTU file a grievance on her behalf, Canino told plaintiff that UTU could not do anything for her because of her probationary status. On December 27, 2000, when plaintiff went to the Jamaica station to return her keys and the LIRR's property, Larry Mielke (Mielke), secretary of GCA 505, told plaintiff the same thing.

By letter dated February 6, 2001, the LIRR advised plaintiff that she was terminated "for giving false information to the medical officer."

On February 13, 2001, plaintiff filed a verified complaint with the New York State Division of Human Rights (NYSDHR), alleging that her employment was terminated by the LIRR because of her disabilities. Specifically, plaintiff claimed that she believed "that the reason for [the LIRR's] decision [to terminate her] was pretextual and that they terminated [her] because of [her] previous disabilities and because [she] suffered injuries while working for them. Even though [she] was injured on the job and both of [her] union reps informed [her] that [the LIRR] would pay for [her] medical care, [the LIRR] has refused to do so. * * *"

By letter dated February 13, 2001, the New York District Office of the United States Equal Employment Opportunity Committee (EEOC) notified plaintiff that her NYSDHR complaint would be investigated by the NYSDHR, not the EEOC. In addition, the EEOC advised plaintiff that her federal rights under the ADA are the same as under Title VII, which are as follows:

> If you want to file a <u>private</u> lawsuit in federal district court * * * because you <u>do not</u> want the [NYSDHR] to conduct an investigation, you may request from the EEOC a <u>Notice of Right to Sue, 180 days after you have filed your complaint.</u> * * * If your want the [NYSDHR] to conduct an investigation, you do not need to make this request, or to contact or write either agency. The [NYSDHR] will contact you and/or advise you in the near future of their investigation and determination findings. (Emphasis in original).

6

> \* \* \*
>
> If you want the EEOC to review the [NYSDHR] final determination, * * *, you may request that the EEOC conduct a substantial weight review. This request must be done in writing to EEOC and within <u>15 days</u> from the date you received the [NYSDHR] final determination. Otherwise, we will adopt the state findings. *Your review request must specify the reason(s) why you do not agree with the [NYSDHR] final determination. (Emphasis in original).

By letter dated February 20, 2001, the LIRR advised plaintiff that she was terminated "for unsatisfactory performance, including [her] providing false information to the [LIRR's] Medical Office."

Plaintiff wrote a letter to Canino dated March 30, 2001, simply to document her earlier request that the union file a grievance on her behalf. In that letter, plaintiff, *inter alia*, referred to a telephone call that she made to Canino's office in January 2001 requesting that UTU provide a written explanation for its inability or unwillingness to represent her in the grievance process.

By letter dated September 27, 2001, the NYSDHR advised plaintiff that it had been notified that the EEOC had issued a Notice of Right to Sue Letter on her case and indicated that, as a result, it was "imperative" that plaintiff complete and return an enclosed questionnaire or it would not know how she wished to proceed with her complaint. On that questionnaire, plaintiff indicated inconsistently that she was planning to pursue a case in federal court and also that she did not plan to file in federal court and would continue her case with the NYSDHR. By way of explanation, plaintiff further indicated that she was trying to retain an attorney to pursue a case in federal court, but that she planned to continue her case with the NYSDHR if she could not retain an attorney.

B. Procedural History

On November 15 or 20, 2001[5], plaintiff filed the instant action in New York State Supreme Court, Queens County, alleging claims for breach of contract and disability discrimination in violation of the NYSHRL. Defendants subsequently removed the case to federal court, without objection, on the ground that plaintiff's claims are preempted by the RLA[6].

On December 4, 2001, the NYSDHR issued a Determination and Order After Investigation (the final determination) concluding that there was no probable cause to believe that the LIRR had engaged in the unlawful discriminatory practice of which plaintiff complained. The NYSDHR found that investigation failed to support plaintiff's allegations that the LIRR "denied her equal terms, conditions and privileges of employment and terminated her, because of her disabilities." The NYSDHR also found that during the period of surveillance, the information plaintiff provided to the LIRR "was contrary to her daily activities and actions," and that "after [plaintiff] was videotaped on several occasions performing activities she stated she could not perform, [the LIRR] decided that, as a probationary employee, [plaintiff] had violated policy." The NYSDHR concluded that the LIRR's termination of plaintiff was for legitimate,

---

[5] There is a discrepancy in the parties' papers.

[6] An action may properly be removed to federal court, even when the complaint does not itself include a federal cause of action, if the state claims alleged are preempted by the RLA. See, Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994); Shafii v. British Airways, PLC, 83 F.3d 566, 569 (2d Cir. 1996). A state claim is preempted by the RLA when resolution of that claim depends on an interpretation of the CBA. Shafii, 83 F.3d at 569; see also Underwood v. Trans World Airlines, Inc., 710 F.Supp. 78, 82-83 (S.D.N.Y. 1989)(holding that generally, the RLA preempts state law claims when the action is substantially dependent upon analysis of the terms of a CBA). Since plaintiff has not objected to removal of the action to federal court, and has not moved for a remand to state court, it is not necessary to determine whether all of her state law claims are, in fact, preempted by the RLA.

8

non-discriminatory reasons which were not shown to be pretextual and dismissed the complaint. The final determination advised plaintiff, *inter alia*, that she could appeal to the New York State Supreme Court by filing a petition with that court within sixty (60) days after service of the final determination. Plaintiff did not appeal the final determination.

Defendants now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint[7].

II.   ANALYSIS

   A.   Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. See id. The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable

---

[7] At a status conference held on October 18, 2004, I directed that defendants limit their motions for summary judgment at this time to procedural issues.

inferences in its favor. See id. at 252; Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

B.  The LIRR's Motion

1.  N.Y. Exec. Law § 297(9)

The LIRR contends that plaintiff's claims are barred by the election-of-remedies provision of N.Y. Exec. Law § 297(9). Section 297(9) of the N.Y. Exec. Law provides, in relevant part:

> "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, * * * and such other remedies as may be appropriate, * * * <u>unless such person has filed a complaint hereunder or with any local commission on human rights</u> * * *, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division. At any time prior to a hearing before a hearing examiner, a person who has a complaint pending at the [NYSDHR] may request that the [NYSDHR] dismiss the complaint and annul his or her election of remedies so that the human rights law claim may be pursued in court, and the [NYSDHR] may, upon such request, dismiss the complaint on the grounds that such person's election of an administrative remedy is annulled. * * *." (Emphasis added).

Accordingly, by the terms of the statute, once a plaintiff brings his or her NYSHRL claims before the NYSDHR, he or she may not commence a subsequent plenary action in court based on the same incident. York v. Association of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002). Moreover, once a party files a complaint with the NYSDHR regarding alleged discrimination, he or she is subsequently barred from commencing an action in court regarding that discrimination, even where, as here, plaintiff attempts to commence the judicial action prior to a determination from the NYSDHR. See, e.g. Moodie v. Federal Reserve Bank of New York,

58 F.3d 879, 882 (2d Cir. 1995)(holding that when a party files a complaint with the NYSDHR regarding alleged discrimination, that party is thereafter barred from commencing an action in court regarding that discrimination, even after withdrawing the administrative complaint); Emil v. Dewey, 49 N.Y.2d 968, 969, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980)(holding that plaintiff's claims were barred by the election of remedies doctrine, notwithstanding that plaintiff withdrew the complaint prior to a determination by the NYSDHR, because there was no showing that it was done for administrative convenience). The election-of-remedies provision is equally applicable to both federal and state courts. See, York, 286 F.3d at 127; see also Moodie, 58 F.3d at 884 (holding that a state law depriving its courts of jurisdiction over a state law claim, such as § 297[9], also operates to divest a federal court of jurisdiction to decide the claim).

Since plaintiff filed a complaint against the LIRR with the NYSDHR regarding the discrimination claims alleged in the instant action, and since those claims were dismissed by the NYSDHR for lack of probable cause, and not on the grounds of administrative convenience, untimeliness, or that the election of remedies is annulled, she is barred by the NYSHRL from relitigating those claims. See, e.g. Ganthier v. North Shore-Long Island Jewish Health System, Inc., 345 F.Supp.2d 271, 282-283 (E.D.N.Y. 2004)(dismissing plaintiff's state law discrimination claims because, *inter alia*, plaintiff filed a complaint with the NYSDHR, which dismissed the complaint for no probable cause); Moguel v. Covenant House/New York, No. 03 Civ. 3018, 2004 WL 2181084, at * 9 (S.D.N.Y. Sept. 29, 2004)(finding that plaintiff's disability-based employment discrimination claims brought under the NYSHRL were barred by N.Y. Exec. Law § 297[9]); Lyman v. City of New York, No. 96 Civ. 2382, 1997 WL 473976, at * 4 (S.D.N.Y. Aug. 20, 1997)(finding plaintiff's NYSHRL claims to be barred by the election of remedies

11

doctrine where plaintiff filed an administrative complaint before filing the judicial action).

Therefore, plaintiff's complaint is dismissed as against the LIRR for lack of subject matter jurisdiction[8].

### C. UTU's Motion

#### 1. Preemption

UTU contends that plaintiff's claims against it are nothing more than a federal claim for breach of a union's duty of fair representation, which preempts all of her state law claims. UTU further contends that plaintiff's claims are, thus, barred by the six month statute of limitations for breach of the duty of fair representation.

##### a. Duty of Fair Representation

"A union, as the exclusive bargaining representative of the employees it represents, owes the employees a duty to represent them fairly in collective bargaining with the employer and in enforcing the resulting CBA." Cooper v. TWA Airlines, LLC, 349 F.Supp.2d 495, 507 (E.D.N.Y. 2004); see also Ford v. Air Line Pilots Ass'n Intern., 268 F.Supp.2d 271, 284 (E.D.N.Y. 2003)(holding that a union has a duty to represent fairly all its members). This duty requires the union "to serve the interest of all members without hostility or discrimination toward

---

[8] In light of this determination, it is unnecessary to consider the LIRR's remaining contentions. See, e.g. Moodie, 58 F.3d at 882 (declining to reach the merits of defendant's remaining arguments since N.Y. Exec. Law § 297[9] deprived the federal court of subject matter jurisdiction); Lyman, 1997 WL 473976, at * 3 (declining to address defendant's arguments regarding dismissal because the court lacked subject matter jurisdiction over plaintiff's NYSHRL claims pursuant to the election-of-remedies provision of N.Y. Exec. Law § 297[9]).

any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A union breaches its duty of fair representation when it acts in a manner that is "arbitrary, discriminatory, or in bad faith." Id., at 190, 87 S.Ct. 903.

Since the scope of the duty of fair representation owed by a union to its members is defined by federal law, state law claims that are "mere refinements" of that duty are preempted. Cooper, 349 F.Supp.2d at 507-508; see also Zuckerman v. Volumes Services America, Inc., 304 F.Supp.2d 365, 373 (E.D.N.Y. 2004)(holding that state law claims alleging conduct that is within the union's duty of fair representation are subsumed by that duty and are therefore preempted). "A claim is a 'mere refinement' of the duty of fair representation if it is based on the same conduct that would support a federal duty of fair representation claim or it if [sic] seeks to vindicate the same rights as the federal duty of fair representation." Cooper, 349 F.Supp.2d at 508; see also Zuckerman, 304 F.Supp.2d at 373 (holding that where a state law claim gives no new rights to the employee and imposes no new duty on the union, it is preempted).

Plaintiff's state law claims against UTU, which, in essence, challenge its failure to file a grievance on her behalf, seek to vindicate the same rights as those protected by the federal duty of fair representation and impose no obligation on the union that is not already required by the duty of fair representation. See, e.g. Marrero v. City of New York, No. 02 Civ. 6634, 2003 WL 1621921, at * 3 (S.D.N.Y. Mar. 28, 2003)(finding that plaintiff's NYSHRL claim against the union alleging that the union failed to represent him fairly at grievance hearings because of his Puerto Rican ancestry, imposed no new duty on the union that was not already required by the duty of fair representation). "It matters not that Plaintiff alleges that the Union is alleged to have

13

failed [her] on account of her alleged disability * * * [since] the duty of fair representation encompasses the duty to represent union members without discrimination." Zuckerman, 304 F.Supp.2d at 373; see also Rodolico v. Unisys Corp., 96 F.Supp.2d 184, 188 (E.D.N.Y. 2000)(holding that the duty of fair representation unquestionably forbids a union from discriminating against its members in its representative capacity). Accordingly, plaintiff's state law claims against UTU are preempted by federal law. See, e.g. Zuckerman, 304 F.Supp.2d at 373 (finding that plaintiff's claim alleging that the union discriminated against her on account of her disability by failing to file a grievance on her behalf and to refer the matter to arbitration, amounted to a claim for breach of the duty of fair representation and was, thus, preempted); Marrero, 2003 WL 1621921, at * 3 (finding that plaintiff's discrimination claim under the NYSHRL was based on a breach of the duty of fair representation and was, thus, preempted).

b. Statute of Limitations

A claim for a breach of the duty of fair representation must be commenced within six months from when plaintiff knew or reasonably should have known that the duty was breached. See, DelCostello v. International Broth. of Teamsters, 462 U.S. 151, 170-172, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)(holding that the six-month limitations period set forth in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applied to "hybrid" cases in which employees sue both their employer for breach of the CBA pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and their union for breach of its duty of fair representation in mishandling the related grievance and arbitration proceedings); Eatz v. DME Unit of Local Union Number 3 of the Intern. Broth. of Elec. Workers, AFL-CIO, 794 F.2d 29, 33 (2d Cir.

1986)(holding that the § 10(b) six-month limitations period also applied to unfair representation claims standing alone); see also Flanigan v. (International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America) Truck Drivers Local No. 671, 942 F.2d 824, 827 (2d Cir. 1991)(holding that a cause of action for breach of a duty of fair representation accrues when the plaintiff could have first successfully maintained a suit based on that cause of action). Moreover, "[o]nce a plaintiff learns of [the] union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiff[] cannot be treated as a continuing violation that precludes the running of the limitations period." Buttry v. General Signal Corp., 68 F.3d 1488, 1492 (2d Cit. 1995)(internal quotations and citation omitted).

It is undisputed that plaintiff knew, at least as of December 27, 2000, that UTU's position was that it could not do anything for her because of her status as a probationary employee. Therefore, plaintiff knew, or should have known, as of that date that UTU would not be filing a grievance or taking any action on her behalf. Accordingly, plaintiff's claims against UTU should have been filed by June 27, 2001. Since plaintiff did not commence this action until, at the earliest, November 15, 2001, her claims against UTU are dismissed as time barred[9]. See, e.g. Zuckerman, 304 F.Supp.2d at 373 (dismissing plaintiff's claims against the union as untimely where the six month statute of limitations period expired prior to the commencement of the action); Marrero, 2003 WL 16221921, at * 3 (denying plaintiff's motion to amend his complaint to allege a cause of action under the NYSHRL against the union where the plaintiff learned of the union's failure to represent him at the grievance hearing more than six months prior to the date

---

[9] Plaintiff does not allege any basis for finding that the limitations period was tolled, that the defense was waived, or that UTU should be equitably estopped from interposing a statute of limitations defense.

15

the original complaint was filed, on the basis that any claim for the breach of the duty of fair representation was time-barred)[10].

III. CONCLUSION

Defendants' motions for summary judgment are granted and the complaint is dismissed in its entirety. The clerk of the court is directed to close this case.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: May *, 2005
Central Islip, New York

Copies to:

Scott Michael Mishkin, P.C.
One Suffolk Square, Suite 520
Islandia, New York 11748

Shapiro, Beilly, Rosenberg,
Albert & Fox LLP
225 Broadway
New York, New York 10007-3088

Berke-Weiss & Pechman LLP
488 Madison Avenue, 11th Floor
New York, New York 10022

The Long Island Railroad Company
Law Department-Mail Code 1143
Jamaica Station, 4th Floor
Jamaica, New York 11435

---

[10] In light of this determination, UTU's remaining contentions will not be addressed.

Guerrieri, Edmond & Clayman, P.C.
1625 Massachusetts Avenue, N.W., Suite 700
Washington, D.C. 20036-2243